IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHERRIE A. GARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV283 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sherrie Garber, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income on September 26, 2006, alleging a disability onset date of July 1,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2003. (Tr. 59, 161.)[2] Her applications were denied initially (Tr. at 59, 60) and upon reconsideration (Tr. at 61, 62). Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 94.) Plaintiff, along with her attorney and a vocational expert ("VE"), attended the subsequent hearing on March 19, 2009. (Tr. at 12.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 27) and, on February 19, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-4).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> . . . .
>
> 3. The claimant has the following severe impairments: Bipolar disorder; post traumatic stress disorder (PTSD); anxiety; depression; fibromyalgia; lumbar spine disorder; mild tremors; bursitis of the right hip; and history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
> . . . .

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #4].

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except her ability to climb ramps or stairs is limited to that needed for building access. She cannot climb ropes, ladders or scaffolding and is limited to occasional bending. She cannot work around unprotected heights and must avoid concentrated exposure to temperature extremes, particularly cold. She is limited to occasionally working with the public and/or co workers [sic] but can work with supervisors as needed. She is limited to noncomplex, routine, repetitive tasks and is unable to perform work with a production rate involving piece work.

(Tr. at 14-16.)

The ALJ then considered Plaintiff's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and determined that, although Plaintiff was unable to perform any of her past relevant work, she could perform other jobs that exist in significant numbers in the national economy. (Tr. at 25-26.) Plaintiff therefore was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 27.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

3

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

4

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

5

('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

6

following severe impairments: bipolar disorder, PTSD, anxiety, depression, fibromyalgia, lumbar spine disorder, mild tremors, bursitis of the right hip, and history of polysubstance abuse. (Tr. at 14-15.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Accordingly, she assessed Plaintiff's RFC and determined that Plaintiff could perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with further restrictions as to climbing, bending, heights, and temperature extremes. The ALJ also limited Plaintiff to only "occasionally working with the public and/or co workers [sic]" and to performing "noncomplex, routine, repetitive tasks" at a non-production rate. (Tr. at 16.) Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could not return to her past relevant work. (Tr. at 25.) However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled. (Tr. at 26-27.)

Plaintiff argues that the ALJ erred in three respects. First, she contends that "[t]he ALJ did not correctly assess numerous treating physician opinions regarding disability." (Pl.'s Br. [Doc. #10] at 14.) In a related, second argument, Plaintiff challenges the ALJ's RFC assessment, noting that the RFC fails to incorporate several restrictions posited by her treating physicians, including postural limitations and poor tolerance for workplace stress. (Pl.'s Br. at 11-14.) Finally, Plaintiff alleges that "[t]he Appeals Council improperly denied [her] request for review in light of new and material evidence." (Pl.'s Br. at 19.) Defendant contends otherwise and urges that substantial evidence supports the ALJ's decision.

7

A.  Treating Physician Opinion

Plaintiff first disputes the ALJ's application of 20 C.F.R. §§ 404.1527(d) and 416.927(d), better known as the "treating physician rule." She initially contends that the ALJ erred by failing to accord "controlling, substantial, or even significant weight" to any of the "ten different treating physician statements regarding Plaintiff's inability to work." (Pl.'s Br. at 14.) However, her brief ultimately addresses the ALJ's treatment of just four opinions, namely those of Drs. Stephen Bissette, Davey Stallings, Richard Workman, and Lea Kirkland, all of whom opined that Plaintiff was completely disabled. (See Tr. 269-71, 306, 394-95, 413.)

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). However, the rule recognizes that the nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords it. 20 C.F.R. §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii). As subsections (d)(2) through (d)(4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2)-(4) and 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590;

8

accord Mastro, 270 F.3d at 178.  Moreover, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Social Security Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone.  20 C.F.R. §§ 404.1527(e), 416.927(e)(1).

Where an ALJ declines to assign controlling weight to a treating physician's medical opinion, she must "'explain in the decision the weight given' thereto and 'give good reasons in [her] . . . decision for the weight.'"  Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished) (quoting 20 C.F.R. § 404.1527; 416.927).  "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts."  Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)).  Such an explanation need not be explicit.  "Implicit assignments of weight can support meaningful review" so long as the ALJ's opinion "make[s] clear that she 'recognized and evaluated the treating relationships' of medical sources."  Thomas, 2012 WL 670522, at *7 (citations omitted).

In the present case, the ALJ adequately indicated the weight she assigned to all of the opinions in question.  First, she explicitly assigned little weight to the opinions of Drs. Kirkland, Stallings, and Workman and set out her reasons for doing so in the decision.  (See Tr. at 19, 24.) The ALJ explained that Dr. Kirkland's opinion was "inconsistent with the other objective medical evidence of record and . . . inconsistent with her own records." (Tr. at 19.)  Specifically, she noted that, "[a]lthough Dr. Kirkland indicated [Plaintiff] was sad, depressed and agitated[,]

9

she [also] indicated [that Plaintiff] had a GAF[6] of 65-70 and noted [that Plaintiff] was cooperative, had good eye contact, logical speech[,] and her affect was appropriate." (Id.; citing Tr. at 410-16.) Dr. Kirkland additionally noted that, although Plaintiff's recurrent mood problems began in 1988, she was able to work "until her back problems caused her to quit" in 2003, and the recent recurrence of some of Plaintiff's symptoms was "due to compliance issues" with her medications. (Tr. at 19, 410-12.) In light of these factors, substantial evidence clearly supports the ALJ's assignment of little weight to Dr. Kirkland's opinion that Plaintiff could not maintain gainful employment due to symptoms of bipolar disorder.

Dr. Stallings' opinion presents a similar situation. As with Dr. Kirkland, the ALJ explicitly accorded little weight to Dr. Stallings' opinion that Plaintiff was disabled from work because it constituted a legal conclusion reserved for the Commissioner. (Tr. at 19.) The ALJ also noted that Dr. Stallings' opinion was inconsistent with other medical records from the same time period, including those of Dr. Thomas Spangler, an orthopedic surgeon to whom Dr. Stallings referred Plaintiff for treatment of her back and joint pain. (See Tr. at 19, 268.) Plaintiff reported that, after Dr. Spangler administered anti-inflammatory injections, her right hip pain was no longer constant and that her coccyx pain had lessened by about 50%. (Tr. at 19, 267.) Despite these improvements, Dr. Spangler opined that Plaintiff's chronic fibromyalgia pain prevented her from performing the lifting demands of her then-current job and that she "should

---

[6] Global Assessment of Functioning, or GAF, "is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" Boyd v. Apfel, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders [DSM-IV] at 32 (4th ed. 1994)). A GAF score of 61-70 generally indicates mild symptoms.

10

find some lighter work." (Id.) At no time, however, did Dr. Spangler suggest that Plaintiff's pain rendered her completely disabled. Because Dr. Spangler is a specialist, the ALJ was entitled to accord greater weight to his opinion than that of Dr. Stallings. See 20 C.F.R. §§ 404.1527(d)(5) and 416.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist.").

The remaining two treating physician opinions identified by Plaintiff, namely those of Drs. Bissette and Workman, fare no better than those of Drs. Kirkland and Stallings. The ALJ's decision notes that there are, as Plaintiff argues here "multiple statements from the claimant's treating sources indicating" her inability to work. (Tr. at 23.) However, the ALJ found these opinions, including those of Drs. Bissette and Workman, "less persuasive because they are inconsistent with their own internal findings," which are recounted at length elsewhere in the decision. (Id.) After reviewing both the opinions and the underlying medical reports, the ALJ also determined that Plaintiff's treating physicians "apparently relied quite heavily on the subjective reports of symptoms and limitations provided by [Plaintiff]." (Id.)

Specifically, the ALJ's decision discounts Dr. Bissette's disability opinion for the following reasons: (1) Plaintiff has not undergone surgery, been hospitalized, or referred to a medical rehabilitation or therapy program for her conditions; (2) despite Dr. Bissette's statement that Plaintiff could do no stooping, lifting, or bending, Plaintiff herself testified that she could perform these activities, but not frequently; (3) Dr. Bissette consistently noted that Plaintiff's condition was stable and well controlled by medication when taken as prescribed; and (4) Dr.

11

Bissette indicated that Plaintiff had been under a disability since July 5, 2003, nearly a year before she established care in his office. (See Tr. at 22, 24, 50, 306, 307-332, 454.)

In the case of Dr. Workman, the ALJ noted that Dr. Workman's medical records consistently indicate a current GAF between 50 and 55, indicating moderate to serious impairment in social and occupational functioning. (See Tr. at 18, 418-33.) The ALJ further noted that Dr. Workman's records also reflect anger control issues. However, the ALJ noted that Dr. Workman also consistently describes Plaintiff as alert, pleasant, and cooperative, with adequate judgment and insight, coherent and relevant speech, and logical and goal-directed thought content. (Id.) The ALJ also noted that Dr. Workman's treatment plan for Plaintiff involved mainly pharmacologic management, with no more than minimal psychotherapy. (Tr. at 18.) These findings fail to mesh with Dr. Workman's assessment of "severe and persistent Bipolar Disorder" which renders Plaintiff "unable to maintain gainful employment." (See Tr. at 395.) In sum, by setting out the above inconsistencies relating to the opinions of Drs. Kirkland, Stallings, Bissette, and Workman, the ALJ clearly provided a "sufficient explanation for 'meaningful review' by the courts."[7] Accordingly, the Court finds no error.

B. RFC Assessment

In a related argument, Plaintiff contends that the ALJ failed to sufficiently incorporate significant limitations in Plaintiff's RFC assessment, including (1) restrictions from GAF scores of 50 or below, (2) an inability to bend, (3) fair to poor tolerance for workplace stress, and (4)

---

[7] In a related matter, Plaintiff argues that the ALJ improperly premised her assignment of little or no weight on improper speculation that Plaintiff's physicians offered opinions of total disability merely to placate Plaintiff or assist her in ongoing litigation. (See Pl.'s Br. at 18; Tr. at 23.) Ultimately, such speculation, even if improper, is rendered harmless by the additional substantial evidence underlying the ALJ's findings.

mild tremors. (Pl.'s Br. at 11-14.) Plaintiff primarily draws the evidence for such restrictions directly from the medical evidence discounted by the ALJ, as discussed in subsection A. However, these limitations also find at least some support elsewhere in the record and therefore warrant further discussion.

RFC measures the most a claimant can still do despite her physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ determines a claimant's RFC only after she considers all relevant evidence of a claimant's impairments, such as her ability to sit-stand, push-pull, lift weight, walk, etc., as well as any related symptoms, including pain. Hines, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b). The statutes, namely 20 C.F.R. § 404.1567, then translate the claimant's exertional abilities into an ability to perform a given level of work (i.e., sedentary, light, medium, heavy, or very heavy). Any non-exertional limitations, which encompass restrictions other than strength demands, may further restrict a claimant's ability to perform jobs within one of these exertional levels. See 20 C.F.R. § 404.1569a(c). An ALJ need not discuss every piece of evidence in making her RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). However, "[s]he must build an accurate and logical bridge from the evidence to [her] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In the present case, Plaintiff first argues that the ALJ failed to "state what weight or consideration was given" to Plaintiff's GAF scores of 50 or below and failed to address these scores in her RFC assessment. (Pl.'s Br. at 13.) To the extent that this argument again challenges the ALJ's weighing of the treating physicians' opinions, it fails for the reasons set out

above. Notably, the ALJ's decision individually discussed the GAF scores assigned by myriad physicians which, as the ALJ later noted, ranged from 50-70 except for one occasion. (Tr. at 23.) The decision also assigned "great weight" to the opinion of Dr. Pallazza, who indicated that Plaintiff's GAF score, "attributable to psychological factors alone would be around 65." (Tr. at 18.) The ALJ found that Dr. Pallazza's opinion was based upon both "the clinical findings and his comprehensive examination of [Plaintiff]" and was "consistent with the other substantive medical evidence of record." (Tr. at 18.) The ALJ then proceeded to discuss treatment notes from Terence Hunt, Judi Burkhart, and Dr. Workman, all of whom treated Plaintiff within a year of Dr. Pallazza's examination, yet reported GAF scores of 42, 50 to 70, and 50 to 55, respectively, during that time period. (Tr. at 18-19.) Thus, the ALJ explicitly considered all of Plaintiff's high and low GAF scores and chose to give more credit those on the higher end of the scale due to their greater consistency with the evidence as a whole. Moreover, Plaintiff points to no evidence demonstrating that her low GAF scores mandate further mental limitations beyond those assessed in the RFC. Rather, she argues that even intermittent scores of 50 or below indicate her complete inability to perform gainful activity. (Pl.'s Br. at 13.) Plaintiff is simply incorrect. A raw GAF score, without more, "does not give the fact finder significant insight into whether a claimant can perform some type of competitive work." Querido v. Barnhart, 344 F. Supp. 2d 236, 246 (D. Mass. 2004).

Plaintiff next contends that the ALJ erred by failing to incorporate Plaintiff's inability to bend into her RFC. Both Dr. Patel, an orthopedist, and Dr. Bissette opined that Plaintiff could perform no bending. (See Tr. at 263, 454.) However, the bending restriction posited by Dr.

14

Patel only limited Plaintiff's bending for a one-month, temporary disability period. With respect to Dr. Bissette's opinion, the ALJ concluded that this opinion was not entitled to controlling weight and was "less persuasive" because the opinion was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with the reports from the other sources who have examined the claimant as well as inconsistent with the findings they reported in their records," as discussed above. (Tr. at 24.) Moreover, as noted in subsection A above, Plaintiff testified at her hearing that she could, in fact, perform some degree of bending (Tr. at 50), and the state agency physicians noted no postural limitations (Tr. at 300, 336). The ALJ was entitled to credit this evidence.

Plaintiff's contention regarding workplace stress fares no better. The ALJ gave great weight to Dr. Pallazza's evaluation, which included a finding that Plaintiff's "tolerance for workplace stress is fair to poor." (Tr. at 18.) Although Plaintiff claims that the ALJ ignored this favorable evidence, the resulting RFC limits Plaintiff to only "occasionally working with the public and/or co workers." Additionally, the RFC restricts Plaintiff to "noncomplex, routine, repetitive tasks" and precludes her from "perform[ing] work with a production rate involving piece work." (Tr. at 16.) Together, these restrictions clearly limit Plaintiff's exposure to stressful work situations. Plaintiff fails to explain why these restrictions are inadequate and fails to point to any record evidence suggesting further restrictions. Substantial evidence therefore supports the ALJ's assessment.

In her final challenge to the RFC assessment, Plaintiff contends that her RFC should have included work limitations to specifically address her severe impairment of mild hand

15

tremors. She argues that, by virtue of being a "severe" impairment, her tremors, by definition, cause a significant limitation in her ability to perform basic work activities. (Pl.'s Br. at 14) (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Defendant counters that the RFC adequately addressed Plaintiff's tremors by limiting her to a reduced range of light work, which would involve lifting no more than 10 pounds frequently and 25 pounds occasionally. (Def.'s Br. at 17.) Although Plaintiff claims that the frequent handling and fingering common in many light work jobs would somehow prevent her from performing such work, no evidence, from Plaintiff's treating physicians or otherwise, suggests any such restrictions regarding Plaintiff's hands. In short, Plaintiff again fails to demonstrate any error on the part of the ALJ.

  C.  Appeals Council Review

Finally, Plaintiff contends that the Appeals Council failed to properly consider medical evidence submitted after her disability hearing. (Pl.'s Br. at 19.) Specifically, Plaintiff submitted evidence of a spinal MRI performed after her hearing which revealed a spinal lesion determined to be synovial cell sarcoma. (Tr. 461, 465-66.) Plaintiff subsequently underwent surgery to remove the cancerous lesion, which was determined to be grade three out of three. (Tr. at 664-68.) She now argues that the "lesion could very well explain some of the chronic low back pain [she] consistently complained of over the past several years." (Pl.'s Br. at 19-20.)

When requesting review by the Appeals Council, a claimant may submit additional evidence for consideration, and in deciding whether to grant a request for review, the Appeals Council will consider the additional evidence if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary of Health & Human

Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). If the Appeals Council makes the additional evidence part of the record, as it did in this case (Tr. at 4), the Appeals Council then evaluates all of the evidence in the record, including the newly-submitted evidence, to determine whether to allow the request for review. If the Appeals Council concludes that the ALJ's decision is not contrary to the weight of the evidence, the Appeals Council can deny the request for review.

Notably, "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review," even if new evidence has been submitted. Meyer, 662 F.3d at 705-706. This "lack of . . . additional fact finding does not render judicial review 'impossible' -- as long as the record provides 'an adequate explanation of the Commissioner's decision.'" Id. at 707 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (internal brackets omitted)). Accordingly, the Fourth Circuit has affirmed in cases where, after reviewing new evidence, substantial evidence supported the ALJ's findings. Meyer, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 634, 638-39 (4th Cir. 1996)). "Conversely, when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record, [the Fourth Circuit has] reversed the ALJ's decision and held that the ALJ's denial of benefits was 'not supported by substantial evidence.'" Meyer, 662 F.3d at 707 (citing Wilkins, 953 F.2d at 96). Where new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which "no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. at 707. Because "[a]ssessing the probative value of

17

competing evidence is quintessentially the role of the fact finder," the Court "must remand the case for further fact finding" in such an instance. Id.

In the present case, Plaintiff appears to argue that the new evidence of a spinal lesion provides an objective explanation for her back pain during the relevant period, and therefore fills an evidentiary gap or competes with prior evidence considered by the ALJ. However, the new evidence submitted to the Appeals Council includes a report from Timothy W. McGowen, M.D., an orthopedic specialist who diagnosed Plaintiff with synovial cell sarcoma, which provides the following analysis of her May 13, 2009 MRI:

> There is no adjacent inflammation and nothing within the spinal column that could account for [Plaintiff's] chronic sciatica. Palpation of this area causes pain and so do other areas adjacent to the cyst on both sides, not just the left. I identified the nature of the cyst to [Plaintiff] as not necessarily being the source of all of her pain.

(Tr. at 464.) In addition, there is no evidence that Plaintiff's cancerous lesion was present during much, if any, of the period between her alleged onset date, July 1, 2003, and the date of her disability hearing. In fact, an MRI of Plaintiff's lumbar spine performed on May 22, 2007 revealed no abnormalities. (Tr. at 388-89.) It was not until May 13, 2009, approximately two months after Plaintiff's hearing, that a subsequent MRI revealed the cancerous lesion, which was surgically removed on July 20, 2009. (Tr. at 461.) Thus, the new evidence does not fill an evidentiary gap or compete with the evidence underlying the ALJ's decision as Plaintiff contends. Moreover, the ALJ's decision in this case did not rest on a determination that Plaintiff lacked impairments that could cause her complaints of pain. Instead, the ALJ found that her severe impairments could reasonably be expected to cause her subjective symptoms, but

18

concluded that Plaintiff's statements regarding intensity, persistence, and limiting effects were not credible. The Appeals Council, after reviewing the record as a whole, including the newly-submitted evidence, concluded that review was not warranted. No further explanation was required. This Court has reviewed the record, including the evidence added to the record by the Appeals Council, and concludes that substantial evidence in this case continues to support the ALJ's findings. See Meyer v. Astrue, 662 F.3d at 707 (citing Smith v. Chater, 99 F.3d 634, 638-39 (4th Cir. 1996)).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #11] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 12th day of August, 2014.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge